NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1513
_____

UNITED STATES OF AMERICA

v.

MICHAEL LEWIS,
Appellant
_____

On Appeal from the District Court of the
Virgin Islands
(D.C. No. 3-15-cr-00036-001)
District Judge:  Hon. Curtis V. Gomez
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 15, 2016

Before:  CHAGARES, JORDAN and HARDIMAN, *Circuit Judges*.

(Filed: December 21, 2016)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Michael Lewis appeals the District Court's decision denying his motion to

suppress evidence of firearms found at a crime scene.  The District Court denied the

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

motion, reasoning that Lewis had no reasonable expectation of privacy in the home where he was arrested and where the firearms were found. On appeal, Lewis contends that he had a reasonable expectation of privacy and that the police were required to obtain a warrant before searching the home. His argument is unpersuasive, and we will affirm.

## I. Background

On June 23, 2015, Virgin Islands police officers responded to a report of a burglary in progress. The call described two suspects in detail. In a subsequent call from an anonymous citizen, Officer Ecedro Lindquist was informed that the suspects were sighted at Coki Point Beach. Officer Lindquist then advised Officer Alphonso Boyce, who was in that area, to be on the lookout for the suspects. At the beach, one of the suspects was spotted sitting next to Lewis.

Boyce recognized Lewis and beckoned him. Lewis responded by throwing his jacket at Boyce and running away. As Lewis fled, the butt of a gun was visible in his pocket. With other officers, Boyce pursued Lewis into a gated yard with two separate residences. The police searched one residence and found no one inside. They then searched the second residence, which had an entrance door ajar, and found Lewis. No one else was there. They arrested Lewis, and a search incident to the arrest revealed a knife and a firearm magazine in his possession. They also searched the home where he was found and discovered three firearms. The home belonged to Marisa Martin, who later described Lewis as a "[c]lose friend" who had been renting the other residence from her for less than a month. (App. at 123.)

2

Lewis was charged with one count of possession of a firearm by a convicted felon, two counts of possession of ammunition by a convicted felon, one count of possession of an unlicensed firearm by a convicted felon, and one count of possession of an unlicensed firearm. He pled guilty to count one (firearm possession by a convicted felon) as part of a conditional plea agreement, and all other counts were dismissed.[1] Prior to the plea, Lewis moved to suppress "all statements [he] made ... as well as all gun and ammunition evidence collected." (*Id*. at 25.)

At the suppression hearing, Martin testified to the following facts: Lewis did not have a key to her home; Lewis did not have permission to be in her home at the time of arrest; she did not own any guns; she did not leave Lewis in her home when she departed that day; and the only way he could have been in her home is if he had broken in. Additionally, Officer Lindquist testified that the two residences were not connected to each other and that no one else was found inside Martin's home when Lewis was arrested. The District Court denied the motion to suppress on the grounds that Lewis had no expectation of privacy in Martin's home. Lewis timely appealed the denial of his motion to suppress the firearms.[2]

---

[1] Under the conditional plea agreement, Lewis reserved the right to appeal the denial of his motion to suppress.

[2] In the District Court, Lewis argued that, in addition to suppressing the firearms evidence, the incriminating statements he proffered to the police should be suppressed. On appeal, however, he presents no argument regarding the statements. (Opening Br. at 15 ("On the argument and authorities cited ... Mr. Lewis moves for this Court to reverse the order denying the motion to suppress and order that *the firearm* [sic] be suppressed.") (emphasis added).) Any such argument is therefore waived. *See Kost v. Kozakiewicz*, 1

3

**II. Discussion**[3]

"We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and we exercise plenary review over questions of law." *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (citing *United States v. Coward*, 296 F.3d 176, 179 (3d Cir. 2002)). A finding of fact is clearly erroneous when we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Lowe*, 791 F.3d 424, 427 (3d Cir. 2015) (quotation omitted). We will not disturb a district court's fact-finding if the "court's account of the evidence is plausible in light of the record viewed in its entirety... ." *Id.*

The primary issue on appeal is whether Lewis had a reasonable expectation of privacy in Martin's dwelling. "The applicability of the Fourth Amendment turns on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016) (quoting *Hudson v. Palmer*, 468 U.S. 517, 525 (1984)). That principle is often spoken of in terms of having or lacking "standing" to object to a search. *See Rakas v. Illinois*, 439 U.S. 128, 132 (1978) ("The concept of standing ... focuses on whether the person seeking to challenge the legality of a search as a basis for suppressing evidence was himself the 'victim' of the search or seizure."). A

---

F.3d 176, 182 (3d Cir. 1993) ("It is also well settled ... that casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal.").

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

4

movant has a legitimate expectation of privacy in a particular place when he manifests an actual expectation of privacy and that expectation is one society recognizes as being reasonable. *Bond v. United States*, 529 U.S. 334, 338-39 (2000). So, for example, while a burglar may have a "subjective expectation of not being discovered" in a home he breaks into, his expectation is not one society recognizes as reasonable because of his wrongful presence. *Rakas*, 439 U.S. at 143 n.12; *see also United States v. Cortez-Dutrieville*, 743 F.3d 881, 884-85 (3d Cir. 2014) (deciding that the defendant, like a squatter or trespasser, had no reasonable expectation of privacy because of his wrongful presence), *cert. denied*, 134 S. Ct. 2156 (2014).

Lewis argues that he had a reasonable expectation of privacy in Martin's home because he lived in the neighboring residence on the gated property and had a prolonged, close relationship with Martin. He argues that, while he was not an overnight guest in her home, he had a legitimate expectation of privacy there because he "is more intimately connected to the property than a mere business associate." (Opening Br. at 9.) Lewis also attempts to analogize the facts in this case to those in *Morton v. United States*, 734 A.2d 178 (D.C. 1999), where the court held that a defendant had a protectable interest in a friend's house as a social guest because he was "[l]ike family." (Opening Br. at 9-10 (quoting *Morton*, 734 A.2d at 182.) The *Morton* court drew on Supreme Court precedent to conclude that "at least social guests of the host generally have a legitimate expectation of privacy... ." *Morton*, 734 A.2d at 182. Lewis says that, in like manner, he had both an actual and an objectively reasonable expectation of privacy because he had achieved "a

5

degree of acceptance into [Martin's] household." (Opening Br. at 9-11 (citing *Minnesota v. Carter*, 525 U.S. 83, 90 (1998)).)

We disagree. As did the District Court, we conclude that Lewis had no expectation of privacy in Martin's home that would be recognized as reasonable under societal norms. Unlike the defendants in *Carter* and *Morton*, who were invited guests of the homeowners at the time of arrest, Lewis was not. *Carter*, 525 U.S. at 85-87; *Morton*, 734 A.2d at 180. Martin testified that Lewis did not have a key to her home and did not have permission to be at her residence at the time of arrest. Because she did not leave Lewis in her home when she left, she concluded that he must have broken in. Her testimony demonstrates that Lewis did not have permission to come and go as he pleased, and nothing in the record indicates that he was viewed "like family," with open access to the residence. Lewis thus had no reasonable expectation of privacy there when he was arrested.

Because Lewis did not have a reasonable expectation of privacy in Martin's home, no discussion of the Fourth Amendment's warrant requirement is necessary. Lewis simply lacks standing to contest the search.

### III. Conclusion

There was no error in the District Court's denial of Lewis's motion to suppress evidence of the firearms. We will therefore affirm.